Raul Perez (SBN 174687)
Raul.Perez@capstonelawyers.com
Melissa Grant (SBN 205633)
Melissa.Grant@capstonelawyers.com
Arnab Banerjee (SBN 252618)
Arnab.Banerjee@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:    (310) 556-4811
Facsimile:    (310) 943-0396

Attorneys for Plaintiff Manuel Zaragoza

[*Additional Attorneys listed on following page*]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL GRILLO, on behalf of himself and all others similarly situated, and as an aggrieved employee pursuant to PAGA,<br><br>Plaintiff,<br><br>vs.<br><br>KEY ENERGY SERVICES, LLC, and DOES 1-100, inclusive,<br><br>Defendants. | Lead Case No.:  2:14-cv-00881-AB<br>Consolidated with: 2:14-cv-03554-AB<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:     September 22, 2017<br>Time:     10:00 a.m.<br>Place:    Courtroom 7B |
| MANUEL ZARAGOZA, individually, and on behalf of other members of the general public similarly situated, and as an aggrieved employee pursuant to the Private Attorneys General Act ("PAGA"),<br>Plaintiff,<br>vs.<br><br>KEY ENERGY SERVICES CALIFORNIA, INC., a Texas corporation; KEY ENERGY SERVICES, LLC, a Texas limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | |

Marcus J. Bradley, Esq. (SBN 174156)
mbradley@bradleygrombacher.com
Kiley L. Grombacher, Esq. (SBN 245960)
kgrombacher@bradleygrombacher.com
Bradley / Grombacher, LLP
2815 Townsgate Road, Suite 130
Westlake Village, California   91361
Telephone:     (805) 270-7100
Facsimile:      (805) 270-7589

Law Offices of Santos Gomez
Santos Gomez, Esq. (SBN 172741)
santos@lawofficesofsantosgomez.com
1003 Freedom Boulevard
Watsonville, CA 95076
Telephone:     (831) 228-1560
Facsimile:      (831) 228-1542

Attorneys for Plaintiff Paul Grillo

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 22, 2017 at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 7B of the above-captioned court, located at 350 W. First Street, Los Angeles, California 90012, the Honorable André Birotte Jr. presiding, Plaintiffs Manuel Zaragoza and Paul Grillo will, and hereby do, move this Court for entry of an order and judgment granting final approval of the class action settlement and all agreed-upon terms therein. This Motion, unopposed by Defendants Key Energy Services California, Inc., and Key Energy Services, LLC, seeks final approval of: (1) the Joint Stipulation of Class Action Settlement and Release; (2) settlement payments to Participating Class Members; (3) a payment to the California Labor and Workforce Development Agency; and (4) and costs/expenses to the settlement administrator, CPT Group, Inc.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Final Approval of Class Action Settlement; (3) the Declaration of Raul Perez; (4) the Declaration of Tarus Dancy on behalf of CPT Group, Inc.; (5) the [Proposed] Order Granting Final Approval of the Class Action Settlement and Judgment; (6) the records, pleadings, and papers filed in this action; and (7) upon such other documentary and/or oral evidence as may be presented to the Court at the hearing.

Dated:  August 11, 2017

Respectfully submitted,

By: /s/ Raul Perez
Raul Perez
Melissa Grant
Arnab Banerjee
**Capstone Law APC**

Marcus J. Bradley
Kiley L. Grombacher
**Bradley / Grombacher, LLP**

Attorneys for Plaintiffs and the Class

# TABLE OF CONTENTS

I.   INTRODUCTION ...........................................................................................1

II.  FACTS AND PROCEDURE...................................................................3

    A.   Overview of the Litigation .............................................................3

    B.   The Parties Settled After Mediation ...........................................4

    C.   The Proposed Settlement Fully Resolves Plaintiffs' Claims ..............................5

        1.   Composition of the Settlement Class..................................5

        2.   Settlement Consideration....................................................5

        3.   Formula for Calculating Settlement Payments...........................5

        4.   Release by the Settlement Class.......................................6

    D.   The Notice and Settlement Administration Process Were Completed Pursuant to the Court's Preliminary Approval Order.........................6

III. ARGUMENT.........................................................................................7

    A.   The Standard for Final Approval Has Been Met ...................................7

    B.   The Settlement Was Achieved After Evaluating the Strengths of Plaintiffs' Case and the Risks, Expense, Complexity, and Likely Duration of Further Litigation.........................................9

    C.   The Settlement Was Reached through Arm's-Length Bargaining in Which All Parties Were Represented by Experienced Counsel....................11

    D.   Class Counsel Conducted a Thorough Investigation of the Factual and Legal Issues............................................12

    E.   The Settlement Class Has Responded Positively to the Settlement................13

    F.   The Proposed PAGA Settlement Is Reasonable .............................14

    G.   The Requested Payment to the Settlement Administrator Is Reasonable and Should Receive Final Approval .................................15

    H.   The Court Should Overrule the Sole Objection to the Settlement .................15

IV.  CONCLUSION.........................................................................................17

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) ........................10

*Churchill Village, LLC v. General Electric*, 361 F.3d 566 (9th Cir. 2004)......................14

*D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).............................................11

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)..............................................8, 9

*Hopson v. Hanesbrands Inc.*, Case No. 08-00844, 2009 U.S. Dist. LEXIS
     33900 (N.D. Cal. Apr. 3, 2009) ...............................................................................15

*In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL),
     2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008) ............................................11

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001) ....................................................16

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) ....................................................................9

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) .....................8, 9

*Rodriguez v. West Pub. Corp.*, 463 F.3d 948 (9th Cir. 2009)................................................9

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ...........................................8

*Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478 (S.D.N.Y. 1970),
     modified, 449 F.2d 51 (2d Cir. 1971), *rev'd*, 409 U.S. 363 (1973) .............................10

*West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710 (S.D.N.Y. 1970).........................10


**STATE CASES**

*7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App.
     4th 1135 (2000) ........................................................................................... 13, 15

*Nordstrom Com. Cases*, 186 Cal. App. 4th 576 (2010)....................................................15


**FEDERAL STATUTES**

Fed. R. Civ. P. 23(e) ............................................................................................................7

1

**SECONDARY AUTHORITIES**

2

Manual for Complex Litigation (4th ed. 2004)........................................................8

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On May 22, 2017, the Court granted preliminary approval of the Joint Stipulation of Class Action Settlement and Release[1] and approved distribution of the Notice of Class Action Settlement ("Class Notice") to all Class Members.  Class Members were given 30 days to opt out or object to the Settlement ("Response Deadline").  Now that the Response Deadline has passed, Plaintiffs Manuel Zaragoza and Paul Grillo are pleased to report that:  (1) only 3 Class Members opted out of the Settlement Class (0.15% of the Settlement Class); (2) only one Participating Class Members objected to the Settlement; (3) the **entire Net Settlement Amount will be disbursed to all 2,013 Participating Class Members**; and (4) the average payment to Participating Class Members is approximately $890, and the highest is approximately $2,230  (Declaration of Tarus Dancy ["Dancy Decl."] ¶¶ 7-9.)

Plaintiffs now seek final approval of this Settlement with Defendants Key Energy Services California, Inc., and Key Energy Services, LLC ("Defendants") (collectively with Plaintiffs, the "Parties").   The basic terms of the Settlement provide for the following:

(1)    A Settlement Class defined as:  All persons who were employed by Defendants in the State of California as non-exempt production employees (i.e., excluding corporate administrative employees), at any time during the period from June 13, 2009 to February 28, 2017.

(2)    A Class Settlement Amount of $3,000,000.  The Class Settlement Amount includes:

(a)    A Net Settlement Amount (calculated as the Class Settlement Amount minus the requested Attorneys' Fees and Costs, Settlement Administration Costs, the payment to the California Labor and

---

[1] Hereinafter, "Settlement" or "Settlement Agreement."  Unless indicated otherwise, all capitalized terms used herein have the same meaning as those defined by the Settlement Agreement.

Workforce Development Agency ["LWDA"], and the Class Representative Enhancement Payments), which will be allocated to all Class Members on a pro-rata basis according to the number of Pay Periods each Class Member worked during the Class Period. **The Entire Net Settlement Amount will be paid to all Class Members who do not opt out of the Settlement Class, and without the need to submit claims for payment.**

(b)  Attorneys' fees not to exceed one-third of the Class Settlement Amount (or $1,000,000) and litigation costs and expenses not to exceed $150,000, to Capstone Law APC ("Lead Class Counsel"), Bradley/Grombacher LLP, and Law Offices of Santos Gomez (collectively, "Class Counsel").

(c)  Settlement Administration Costs of $25,000 to be paid to Court-appointed settlement administrator, CPT Group, Inc.

(d)  A $15,000 payment to the LWDA pursuant to the Labor Code Private Attorneys General Act of 2004 ("PAGA").

(e)  Class Representative Enhancement Payments of $10,000, each, to Manuel Zaragoza and Paul Grillo for their services on behalf of the Settlement Class and for agreeing to broader releases than those required of other Class Members.

An objective evaluation of the Settlement confirms that the relief negotiated on the Class' behalf is fair, reasonable, and valuable. The Settlement was negotiated by the Parties at arm's length with helpful guidance from Jeffrey Ross, an experienced and well-respected class action mediator, and the Settlement confers substantial benefits to Class Members. The relief offered by the Settlement is particularly impressive when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases (*see infra*). Indeed, by settling now rather than proceeding to trial, Class Members will not have to wait (possibly years) for relief, nor will they have to bear the risk of class

1    certification being denied or of Defendants prevailing at trial.

2          Accordingly, given the Settlement's favorable terms and the manner in which

3    these terms were negotiated and received by Class Members, Plaintiffs respectfully

4    request that the Court grant this Motion for Final Approval of the Settlement Agreement

5    and retain jurisdiction to enforce the Settlement.

6    **II.     FACTS AND PROCEDURE**

7          **A.     Overview of the Litigation**

8          This consolidated action is comprised of two related cases: (1) *Manuel Zaragoza*

9    *v. Key Energy Services LLC, et al.*, C.D. Cal. Case No. 14-cv-03554 (filed in Los

10   Angeles County Superior Court on June 13, 2013); and (2) *Paul Grillo v. Key Energy*

11   *Services LLC, et al.*, C.D. Cal. Case No. 14-cv-00881 (filed in Santa Barbara County

12   Superior Court on Nov. 22, 2013).  (Declaration of Raul Perez ["Perez Decl."] ¶ 2.)

13         Plaintiff Manuel Zaragoza was employed as a non-exempt "Floorhand" from

14   approximately May 2011 to August 2011, and again from August 2012 to February of

15   2013, on Defendants' Bakersfield, California, onshore oil rig. Plaintiff Paul Grillo was

16   also employed as a "Floorhand" at various onshore oil rigs in Kern and Santa Barbara

17   Counties from approximately April 2013 through September 2013, when he was laid

18   off.  Defendants rehired Plaintiff Grillo in or about September 2013, as a non-exempt

19   hourly-paid "Swamper" and "BOP Tool Tech" on onshore oil rigs.  (Perez Decl. ¶ 3.)

20         The operative First Amended Consolidated Complaint alleges class claims for

21   violations of California law regarding meal and rest periods, unpaid off-the-clock hours

22   worked, overtime pay, minimum wages, expense reimbursement, and wage statement

23   violations, as well as derivative claims for the late payment of wages, inaccurate wage

24   statements, and unlawful and unfair business practices under California Business &

25   Professions Code section 17200, *et seq.*  The First Amended Consolidated Complaint

26   also seeks civil penalties under the Private Attorneys General Act of 2004 ("PAGA")

27   codified at California Labor Code section 2698, *et seq.*  (Perez Decl. ¶ 4.)

28         On December 22, 2015 the Court certified Plaintiffs' Business Expense and

*Brinker* Rest Break subclasses.  (Perez Decl. ¶ 5.)  Thereafter, on February 2, 2016, Plaintiffs moved to amend the class certification order on the following grounds:  (1) the Court should also have certified the derivative claims relating to the certified Business Expense and *Brinker* Break subclasses, such as claims under Labor Code sections 201 and 202 (failure to pay wages upon discharge); section 226 (failure to provide accurate wage statements); and California Business and Professions Code section 17200, *et seq.*; (2) the Court erred in declining to certify the Wage Statement Subclass by failing to consider evidence that wage statements contained uniform violations and by applying a person-by-person analysis rather than a "reasonable person" standard; and (3) the Court erred in declining to certify the Regular Rate Subclass by failing to consider that the software program that calculates employees' overtime necessarily does not engage in an employee-by employee analysis.  (Perez Decl. ¶ 6.)

On July 6, 2016, the Court granted Plaintiffs' motion in its entirety.  (Perez Decl. ¶ 7.)

### B.     The Parties Settled After Mediation

On June 27, 2016, the Parties participated in a full day of mediation with Jeffrey Ross, an experienced and well-respected mediator of wage and hour class actions.  Mr. Ross helped to manage the Parties' expectations and provided a useful, neutral analysis of the issues and risks to both sides.  Although the parties did not settle at mediation, they continued their settlement negotiations with Mr. Ross' continuing guidance.  Following several months of ongoing negotiations, the Parties came to an agreement on the principal terms of a class action settlement.  The complete and final terms of the Parties' settlement are now set forth in the Joint Stipulation of Class Action Settlement and Release.  At all times, the Parties' negotiations were adversarial and non-collusive, and the Settlement thus constitutes a fair, adequate, and reasonable compromise of the claims at issue.  (Perez Decl. ¶ 12.)

**C.     The Proposed Settlement Fully Resolves Plaintiffs' Claims**

**1.     Composition of the Settlement Class**

The Settlement Class consists all persons who were employed by Defendants in the State of California as non-exempt production employees (i.e., excluding corporate administrative employees), at any time during the period from June 13, 2009 to February 28, 2017.  (Settlement Agreement ¶ 5.)

**2.     Settlement Consideration**

Plaintiffs and Defendants have agreed to settle all class claims and representative claims alleged in the Actions in exchange for the Class Settlement Amount of $3,000,000.  The Class Settlement Amount includes: (1) settlement payments to Participating Class Members; (2) $1,000,000 in attorneys' fees and up to $150,000 in litigation costs/expenses to Class Counsel; (3) a $15,000 payment to the LWDA; (4) Settlement Administration Costs of approximately $25,000; and (5) Class Representative Enhancement Payments of up to $10,000, each, to Manuel Zaragoza and Paul Grillo for their services on behalf of the Settlement Class.  (Settlement Agreement ¶¶ 2, 7, 8, 13, 26.)

Subject to the Court approving Attorneys' Fees and Costs, the payment to the LWDA, Settlement Administration Costs, and the Class Representative Enhancement Payments, the Net Settlement Amount will be distributed to all Participating Class Members.  Because the Class Settlement Amount is non-reversionary, 100% of the Net Settlement Amount will be paid to Participating Class Members, and without the need to submit claims for payment.  (*Id.* at ¶ 34.)

**3.     Formula for Calculating Settlement Payments**

Each Class Member's share of the Net Settlement Amount will be proportional to the number of Pay Periods he or she worked during the Class Period.  (Settlement Agreement ¶¶ 19, 34.)  Individual Settlement Payments will be calculated as follows:

- Defendants will calculate the total number of Pay Periods worked by each Class Member during the Class Period and the aggregate total number of Pay Periods worked by all Class Members during the Class Period.

- To determine each Class Member's estimated "Individual Settlement Payment," the Settlement Administrator will use the following formula: The Net Settlement Amount will be divided by the aggregate total number of Pay Periods, resulting in the "Pay Period Value." Each Class Member's "Individual Settlement Payment" will be calculated by multiplying each individual Class Member's total number of Pay Periods by the Pay Period Value.

- The Individual Settlement Payment will be reduced by any required deductions for each Participating Class Members as specifically set forth herein, including employee-side tax withholdings or deductions.

- The entire Net Settlement Amount will be disbursed to all Class Members who do not submit timely and valid Requests for Exclusion. If there are any valid and timely Requests for Exclusion, the Settlement Administrator shall proportionately increase the Individual Settlement Payment for each Participating Class Member according to the number of Pay Periods worked, so that the amount actually distributed to the Settlement Class equals 100% of the Net Settlement Amount.

(Settlement Agreement ¶ 34.)

### 4.    Release by the Settlement Class

In exchange for the Class Settlement Amount, Plaintiffs and Class Members who do not opt out will agree to release the Released Parties for the Released Claims, which are defined as:

> All claims, rights, suits, penalties, demands, liabilities, damages, losses, and causes of action which were brought in the First Amended Consolidated Complaint and which could have been asserted in the First Amended Consolidated Complaint arising from, or related to, the same set of operative facts set forth in the First Amended Consolidated Complaint, including: (i) all claims for unpaid overtime; (ii) all claims for meal and rest period violations; (iii) all claims for unpaid minimum wages; (iv) all claims for the failure to timely pay wages upon termination; (v) all claims for the failure to timely pay wages during employment; (vi) all claims for wage statement violations; (vii) all claims to reimburse employees for necessary business expenses; and (viii) all claims asserted through California Business & Professions Code §§ 17200, et seq., and California Labor Code §§ 2698, et seq. based on the preceding claims.

(Settlement Agreement ¶ 22.) The Released Claims are those that accrued during the period from June 13, 2009 to February 28, 2017. (*Id.*)

### D.    The Notice and Settlement Administration Process Were Completed Pursuant to the Court's Preliminary Approval Order

As authorized by the Court's Order preliminarily approving the Settlement Agreement, the Parties engaged CPT to provide settlement administration services.

1  (Dancy Decl. ¶ 2.)  CPT's duties have included:  (1) printing and mailing Class Notices,

2  (2) calculating settlement payments (this will include distribution of funds and tax-

3  reporting following final approval), and (3) answering questions from Class Members.

4  (*Id.*)

5          On May 24, 2017, CPT received the Class Notice prepared jointly by Class

6  Counsel and counsel for Defendants and approved by the Court.  (Dancy Decl. ¶ 3.)  The

7  Class Notice summarized the Settlement's principal terms, provided Class Members

8  with an estimate of how much they would be paid if the Settlement received final

9  approval, and advised Class Members about how to opt out of the Settlement and how to

10  object.  (Dancy Decl., Ex. A.)

11          Separately, counsel for Defendants provided CPT with a mailing list (the "Class

12  List"), which included each Class Member's full name, last known address, Social

13  Security Number, and information necessary to calculate payments.  (Dancy Decl. ¶ 4.)

14  The mailing addresses contained in the Class List were processed and updated using the

15  National Change of Address Database maintained by the U.S. Postal Service.  (*Id.* at

16  ¶ 5.)  On June 27, 2017, CPT mailed Class Notices to Class Members via First-Class

17  U.S. mail.  (*Id.*)  Class Members were given until July 27, 2017 to opt out or object to

18  the Settlement.  Plaintiffs are pleased to report that less than 0.15% of the Settlement

19  Class opted out and only one Class Member objected to the Settlement.  (*Id.* at ¶¶ 8-9.)

20  **III.    ARGUMENT**

21          **A.    The Standard for Final Approval Has Been Met**

22          A class action may only be settled, dismissed, or compromised with the Court's

23  approval.  Fed. R. Civ. Proc. 23(e).  The process for court approval of a class action

24  settlement is comprised of three principal stages:

25          <u>Preliminary Approval</u>:  The proposed settlement agreement is preliminarily

26  reviewed by the Court for fairness, adequacy, and reasonableness.  If the Court believes

27  the settlement falls within the range of reasonableness, such that proceeding to a formal

28  fairness hearing is warranted, it orders notice of the settlement disseminated to the class.

1    *See* Manual for Complex Litigation § 21.632 (4th ed. 2004).

2           Class Notice:  Notice of the settlement is disseminated to the class, giving class

3    members an opportunity to object to the settlement's terms or preserve their right to

4    bring an individual action by opting out.  *See id.*, § 21.633.

5           Final Approval:  A formal fairness or final-approval hearing is held by the Court,

6    at which class members can be heard regarding the settlement, and at which evidence

7    and argument concerning the fairness, adequacy, and reasonableness of the settlement is

8    presented.[2]  Following the hearing, the Court decides whether to approve the settlement

9    and enter a final order and judgment.  *See id.*, § 21.634.

10          The first two steps have been completed.  The Court has preliminarily reviewed

11   the proposed settlement for fairness and found it to be within the range of reasonableness

12   meriting court approval.  (*See* Order Granting Preliminary Approval of Class Settlement,

13   Dkt. No. 118.)  In addition, the Settlement Administrator has notified Class Members of

14   the proposed settlement and upcoming fairness hearing as directed by the Court.  (*See*

15   *generally* Dancy Decl.)  Plaintiffs now ask the Court to grant final approval of the

16   proposed settlement.

17          The decision about whether to approve the proposed settlement is committed to

18   the sound discretion of the trial judge, and will not be overturned except upon a strong

19   showing of a clear abuse of discretion.  *Hanlon*, 150 F.3d at 1026-1027.  The Ninth

20   Circuit has set forth a list of non-exclusive factors that a district court should consider in

21   deciding whether to grant final approval, namely: (1) the strength of plaintiffs' case, and

22

23          [2] A proposed class action settlement may be approved if the Court, after allowing
     absent class members an opportunity to be heard, finds that the settlement is "fair,
24   reasonable, and adequate."  In making this determination, "the court's intrusion upon
     what is otherwise a private consensual agreement negotiated between the parties to a
25   lawsuit must be limited to the extent necessary to reach a reasoned judgment that the
     agreement is not the product of fraud or overreaching by, or collusion between, the
26   negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and
     adequate to all concerned."  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir.
27   2009) (*quoting Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)); *see also*
     *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)
28   ("voluntary conciliation and settlement are the preferred means of dispute resolution.
     This is especially true in complex class action litigation . . . .").

1  the risk, expense, complexity, and likely duration of further litigation; (2) the risk of

2  maintaining class action status throughout the trial; (3) the amount offered in settlement;

3  (4) the extent of discovery completed, and the stage of the proceedings; (5) the

4  experience and views of counsel; and (6) the reaction of the class members to the

5  proposed settlement. *Id.* at 963 (*citing Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir.

6  2003)).

7        These factors, which are discussed below, confirm that the proposed settlement is

8  more than fair, reasonable, and adequate for Class Members.  The settlement provides

9  considerable value; Class Members need not bear the risk and delay associated with trial

10  proceedings to obtain these benefits; and the Settlement has been met with substantial

11  support and no opposition from Class Members.

12      **B.**      **The Settlement Was Achieved After Evaluating the Strengths of**

13             **Plaintiffs' Case and the Risks, Expense, Complexity, and Likely**

14             **Duration of Further Litigation**

15        In assessing the probability and likelihood of success, "the district court's

16  determination is nothing more than an amalgam of delicate balancing, gross

17  approximations, and rough justice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d

18  615, 625 (9th Cir. 1982) (internal quotation marks omitted).  There is "no single

19  formula" to be applied, but the court may presume that the parties' counsel and the

20  mediator arrived at a reasonable range of settlement by considering Plaintiffs' likelihood

21  of recovery. *Rodriguez v. West Pub. Corp.*, 463 F.3d 948, 965 (9th Cir. 2009).

22        Plaintiffs were cautiously optimistic about the chances of prevailing at trial on

23  their certified claims.  Nevertheless, Plaintiffs recognize that if the litigation had

24  continued, they may have encountered significant legal and factual hurdles that could

25  have prevented the Class from obtaining full recovery for their claims, or perhaps even

26  any recovery (under the worst case scenario).  In particular, Plaintiffs' decision to settle

27  was influenced by the following considerations:  (i) the strength of Defendants' defenses

28  on the merits; (ii) the risk of losing on any of a number of dispositive motions that could

1  have been brought between now and trial (e.g., motions to decertify the class, motions

2  for summary judgment, motion to strike the PAGA claims as unmanageable, and/or

3  motions in limine) which may have eliminated all or some of Plaintiffs' claims, or barred

4  evidence necessary to prove such claims; (iii) the risk of losing at trial; (iv) the chances

5  of a favorable verdict being reversed on appeal; and (v) the difficulties attendant to

6  collecting on a judgment.[3]

7        Moreover, even if certification status had been maintained through trial, Plaintiffs

8  were cognizant of the fact that the outcome was far from certain, and that Defendants

9  were mounting an aggressive defense.  Although Plaintiffs believe that they have valid

10  counter-arguments to the defenses, and were cautiously optimistic about their chances of

11  prevailing at trial, this optimism was tempered by the recognition that the odds of a

12  favorable verdict being reversed on appeal are not too remote to ignore.  *West Virginia v.*

13  *Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past

14  experience that no matter how confident one may be of the outcome of litigation, such

15  confidence is often misplaced"), *aff'd*, 440 F.2d 1079 (2d Cir. 1971); *Berkey Photo, Inc.*

16  *v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment

17  after trial); *Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478 (S.D.N.Y. 1970),

18  modified, 449 F.2d 51 (2d Cir. 1971), *rev'd*, 409 U.S. 363 (1973) (overturning $145

19  million judgment after years of appeals).

20        Additionally, early resolutions save time and money that would otherwise go to

21  litigation.  Parties' resources, as well as the Court's, would be further taxed by continued

22  litigation.  And if this action had settled following additional litigation, the settlement

23  amount would likely have taken into account the additional costs incurred, such that

24  there may have been less available for Class Members. Cost savings is one reason why

25  California policy strongly favors early settlement.  *See Neary v. Regents of University of*

26

27  _____

[3] Defendant filed for a prepackaged chapter 11 bankruptcy on October 26, 2016.
28  Although, this action was unaffected by the bankruptcy proceedings, Plaintiffs gave due
consideration to the fact that if they prevailed at trial, they may have difficulty collecting
on a judgment.

1   *California*, 3 Cal. 4th 273, 277 (1992) (explaining the high value placed on settlements

2   and observing that "[s]ettlement is perhaps most efficient the earlier the settlement

3   comes in the litigation continuum."). This concern also supports settlement.

4       In summary, although Plaintiffs and their counsel maintained a strong belief in

5   the underlying merits of the claims, they also acknowledge the significant challenges

6   posed by continued litigation through trial.  Accordingly, when balanced against the risk

7   and expense of continued litigation, the settlement is fair, adequate, and reasonable.

8   *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("the very

9   essence of a settlement is compromise, a yielding of absolutes and an abandoning of

10  highest hopes").

11       **C.    The Settlement Was Reached through Arm's-Length Bargaining in**

12            **Which All Parties Were Represented by Experienced Counsel**

13       As discussed above, the Settlement is the result of arm's-length negotiations by

14  experienced counsel.  The Parties participated in mediation with Jeffrey Ross, a respected

15  mediator of wage and hour class actions.  Mr. Ross helped to manage the Parties'

16  expectations and provided a useful, neutral analysis of the issues and risks to both sides.

17  A mediator's participation weighs considerably against any inference of a collusive

18  settlement.  *See   In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL),

19  2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008); *D'Amato v. Deutsche Bank*,

20  236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in pre-certification settlement

21  negotiations helps to ensure that the proceedings were free of collusion and undue

22  pressure.")  At all times, the Parties' negotiations were adversarial and non-collusive.

23       The Parties were represented by experienced class action counsel throughout the

24  negotiations resulting in this Settlement.  Plaintiffs were represented by Capstone Law

25  APC, Bradley/Grombacher LLP, and Law Offices of Santos Gomez.  Class Counsel

26  employ seasoned class action attorneys who regularly litigate wage and hour claims

27  through certification and on the merits, and have considerable experience settling wage

28  and hour class actions.  Defendants were represented by Buchalter, which operates a

1    respected wage and hour defense practice.

2          As this Settlement is the "result of arms'-length negotiations by experienced class

3    counsel, [it is] entitled to 'an initial presumption of fairness.'" *Volkswagen*, 2016 WL

4    4010049, at *14 (internal citation omitted).

5          **D.    Class Counsel Conducted a Thorough Investigation of the Factual**

6                  **and Legal Issues**

7          The Settlement is the product of informed negotiations following extensive

8    investigation by Class Counsel.  During this matter's pendency, the Parties thoroughly

9    investigated and researched the claims in controversy, their defenses, and the developing

10   body of law.  The investigation entailed the exchange of information pursuant to formal

11   and informal discovery methods, including interrogatories and document requests, and

12   dozens of depositions.  In the course of written discovery, Plaintiffs received and

13   analyzed over 80,000 pages of documents, *inter alia*, the following information and

14   evidence with which to properly investigate and evaluate the claims, including: (1) Class

15   Member contact information; (2) Defendants' written policies regarding, e.g., meal and

16   rest period policies; (3) wage statements; and (4) employee time punch records.  (Perez

17   Decl. ¶ 8.)

18         Apart from written discovery, Class Counsel also deposed Defendants' persons

19   most knowledgeable to testify about their labor policies and practices, and also the Class

20   Members who submitted declarations in support of Defendants' opposition to the motion

21   for class certification.  Class Counsel also defended Plaintiffs' depositions, the

22   depositions of Class Members who submitted declarations in support of Plaintiffs'

23   motion for class certification, and the deposition of Plaintiffs' expert witness re

24   certification.  In total, Class Counsel took or defended more than 40 depositions in this

25   matter.  (Perez Decl. ¶ 9.)

26         After Defendant produced Class Member contact information, Class Counsel

27   interviewed Class Members to determine the extent and frequency of alleged Labor

28   Code violations, to learn more about their day-to-day circumstances giving rise to the

1    alleged violations, and to obtain declarations in support of Plaintiffs' motion for class
2    certification.  (Perez Decl. ¶ 10.)

3          Overall, Class Counsel performed an exhaustive investigation into the claims at
4    issue, which included:  (1) determining Plaintiffs' suitability as putative class
5    representatives through interviews, background investigations, and analyses of their
6    employment files and related records; (2) evaluating all of Plaintiffs' potential claims; (3)
7    researching similar wage and hour class actions as to the claims brought, the nature of
8    the positions, and the type of employer; (4) interviewing putative Class Members to
9    gather information about potential claims, identify additional witnesses, and obtain
10   declarations in support of the motion for class certification; (5) analyzing Defendants'
11   labor policies and practices; (6) deposing Defendants' persons most knowledgeable and
12   the Class Members who submitted declarations in support of Defendants' opposition to
13   the motion for class certification;  (7) defending Plaintiffs' depositions, the deposition of
14   Plaintiffs' expert re certification, and the depositions of Class Member declarants; (8)
15   researching settlements in similar cases; (9) conducting a discounted valuation analysis
16   of claims; (10) drafting the mediation brief; (11) participating in mediation; and (12)
17   finalizing the Settlement Agreement.  The extensive document and data exchanges have
18   allowed Class Counsel to appreciate the strengths and weaknesses of the claims alleged
19   against Sunrise and the benefits of the proposed Settlement.  (Perez Decl. ¶ 11.)

20         **E.     The Settlement Class Has Responded Positively to the Settlement**

21         The Settlement Class' response demonstrates its support for this settlement—only
22   3 Class Members opted out and only one Class Member objected to the Settlement.
23   (Dancy Decl. ¶¶ 8-9.)  Participating Class Members will share the entire Net Settlement
24   Amount and will receive an average payment of $890, with the highest being $2,230.
25   (*Id.* at ¶ 7.)  A low number of opt-outs and objections is a strong indicator that a
26   settlement is fair and reasonable.  *7-Eleven Owners for Fair Franchising v. Southland*
27   *Corp.*, 85 Cal. App. 4th 1135, 1152-53 (2000) (class response favorable where "[a] mere
28   80 of the 5,454 national class members elected to opt out  [(1.5% of the entire Class)]

1    and . . . [a] total of nine members . . . objected to the settlement); *Churchill Village, LLC*

2    *v. General Electric*, 361 F.3d 566 (9th Cir. 2004) (affirming settlement approval where

3    45 of approximately 90,000 notified class members objected and 500 opted out).  The

4    Settlement Class' response—both in the low rate of opt-outs and the complete absence

5    of objectors—compares favorably to those cases and warrants final approval.

6          Likewise, the average Class Member recovery of $890 compares favorably to

7    other wage and hour class action settlements for similar claims on behalf of non-exempt

8    employees.  *See*, *e.g.*, *Palencia v. 99 Cents Only Stores*, No. 34-2010-00079619

9    (Sacramento County Super. Ct.) (average net recovery of approximately $80); *Fukuchi*

10   *v. Pizza Hut*, Case No. BC302589 (L.A. County Super. Ct.) (average net recovery of

11   approximately $120); *Contreras v. United Food Group, LLC*, Case No. BC389253

12   (L.A. County Super. Ct.) (average net recovery of approximately $120); *Ressler v.*

13   *Federated Department Stores, Inc.*, Case No. BC335018 (L.A. County Super. Ct.)

14   (average net recovery of approximately $90); *Doty v. Costco Wholesale Corp.*, Case No.

15   CV05-3241 FMC-JWJx (C.D. Cal. May 14, 2007) (average net recovery of

16   approximately $65); *Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD

17   (E.D. Cal.) (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores,*

18   *Inc.*, Case No. 04CC00213 (Orange County Super. Ct.) (average net recovery of

19   approximately $35); and *Gomez v. Amadeus Salon, Inc.*, Case No. BC392297 (L.A.

20   Super. Ct.) (average net recovery of approximately $20).

21          **F.     The Proposed PAGA Settlement Is Reasonable**

22          Pursuant to the Settlement Agreement, $20,000 from the Class Settlement

23   Amount shall be allocated to the resolution of the PAGA claim, of which 75% ($15,000)

24   will be paid directly to the LWDA, and the remaining 25% will be added to the Net

25   Settlement Amount.  (Settlement Agreement ¶¶ 13, 32.)  This result was reached after

26   good-faith negotiation between the parties.  Where PAGA penalties are negotiated in

27   good faith and "there is no indication that [the] amount was the result of self-interest at

28   the expense of other Class Members," such amounts are generally considered

1    reasonable. *Hopson v. Hanesbrands Inc.*, Case No. 08-00844, 2009 U.S. Dist. LEXIS

2    33900, at *24 (N.D. Cal. Apr. 3, 2009); *see*, *e.g.*, *Nordstrom Com. Cases*, 186 Cal. App.

3    4th 576, 579 (2010) ("[T]rial court did not abuse its discretion in approving a settlement

4    which does not allocate any damages to the PAGA claims.").

5       The PAGA component of the Settlement is the product of arms'-length

6    negotiations between counsel well versed in the intricacies of PAGA litigation and more

7    importantly, wage and hour employment law. Class Counsel conducted extensive

8    formal and informal investigation and discovery into the claims at issue and have

9    assessed both the strengths and weaknesses of the claims and the risks of continued

10   litigation. Based on the preceding, Class Counsel strongly believe that the PAGA

11   component of the Settlement appropriately reflects the relative strengths of the Parties'

12   respective claims and defenses, as well as the substantial risks presented in continuing

13   the litigation.

14       **G.**    **The Requested Payment to the Settlement Administrator Is**

15                  **Reasonable and Should Receive Final Approval**

16       Plaintiffs request final approval of settlement administration costs in the amount

17   of $25,000. (Dancy Decl. ¶ 10.) CPT has promptly and properly distributed the Class

18   Notice to all Class Members and completed its duties in accordance with the settlement

19   terms and the Court's preliminary approval Order. (*See generally* Dancy Decl.)

20   Accordingly, the $25,000 payment is fair and reasonable and should be accorded final

21   approval along with the rest of the Settlement terms.

22       **H.**    **The Court Should Overrule the Sole Objection to the Settlement**

23       In any litigation involving a large class, an absence of objections would be

24   "extremely unusual." *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465,

25   478 (S.D.N.Y.1998) (observing that "[i]n litigation involving a large class, it would be

26   'extremely unusual' not to encounter objections."); *7-Eleven Owners for Fair*

27   *Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135, 1152-53 (2000) (class response

28   favorable where "[a] mere 80 of the 5,454 national class members elected to opt out

1   [(1.5% of the entire Class)] and . . . [a] total of nine members . . . objected to the

2   settlement); *See In re Cendant Corp. Litig.*, 264 F.3d 201, 234-35 (3d Cir. 2001)

3   (recognizing that low number of objectors and opt-outs strongly favors settlement and

4   that "[t]he vast disparity between the number of potential class members who received

5   notice of the Settlement and the number of objectors creates a strong presumption that

6   this factor weighs in favor of the Settlement").

7      The true measure of a settlement's reasonableness, therefore, is not whether every

8   class member was satisfied with the settlement, but whether a predominance of class

9   members was satisfied.  In *Churchill Village*, for example, the Ninth Circuit affirmed

10  settlement approval where fewer than 50 of approximately 90,000 notified class

11  members objected and 500 opted out.  361 F.3d at 577.  "A settlement is not to be

12  deemed unfair or unreasonable simply because a large number of Class members oppose

13  it."  *See In re Wash. Pub. Power Supply System Sec. Litig.*, 720 F. Supp. 1379, 1394 (D.

14  Ariz. 1989), *aff'd sub nom.*, *Class Plaintiff v. City of Seattle*, 955 F.2d 1268 (9th Cir.

15  1992).  Here, over 2,000 Class Members received notice of the Settlement, and only one

16  Class Member objected to the settlement.  This response provides a strong basis in itself

17  for granting final approval of the settlement.  *See Class Plaintiffs v. Seattle*, 955 F.2d

18  1268, 1291-96 ((9th Cir. 1992); *Churchill Village, LLC*, 361 F.3d at 577; *In re Wash.

19  Pub. Power Supply Sys. Sec. Litig.*, 19 F. 3d at 1294-95.

20     Here, the sole objector claims he is owed "much more" than the $1,671.60 gross

21  payment made available from the Settlement.  (*See* Dancy Decl. ¶ 9, Ex. B.)  Yet when

22  Class Counsel contacted the objector and asked him how much more he thought he was

23  owed, the objector was unable to say or even provide a rough estimate, insisting instead

24  without foundation that he should just be paid more.  (*See* Perez Decl. ¶ 13.)

25     Because all settlements are the product of compromise, the issue before Court is

26  not whether the settlement could have been for a slightly greater amount, but whether it

27  is fair, adequate, and free from collusion.  In this regard, the Court is aware from its

28  supervision of the litigation that the Parties' settlement was reached after adversarial

litigation.  Moreover, the fact that the vast majority of Class Members accepted the settlement offer, and elected to remain in the Settlement Class, presents the Court with certain objective positive evidence of the Settlement's fairness.  If the objector had idiosyncratic claims, he should have opted out.  Indeed, the objector was given a chance to opt-out after the deadline had passed, but he refused to do so.  For these reasons, and the reasons set forth throughout this Order, the objection is overruled.

## IV.   CONCLUSION

The Parties have negotiated a fair and reasonable settlement of a case that provides relief that likely would never have been realized but for this class action. Accordingly, final approval of the Settlement should be granted.


Dated:  August 11, 2017                    Respectfully submitted,

                                           By: /s/ Raul Perez
                                               Raul Perez
                                               Melissa Grant
                                               Arnab Banerjee
                                               **Capstone Law APC**

                                               Marcus J. Bradley
                                               Kiley L. Grombacher
                                               **Bradley / Grombacher, LLP**

                                               Attorneys for Plaintiffs and the Class